1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

14

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 07-CR-2233-L |
| Plaintiff, | ORDER |
| vs. | |
| MIGUEL ANGEL OLEA-DIAZ, | |
| Defendant. | |

15

16      On December 10, 2007, the Court conducted an evidentiary hearing relating to Defendant

17  Miguel Angel Olea-Diaz' ("Defendant") Motion to Suppress Evidence Seized in Violation of the

18  Fourth Amendment ("Motion").   Defendant argues that the Border Patrol agents did not have

19  reasonable suspicion to stop the vehicle he was driving, and therefore, asks this court to suppress any

20  evidence seized as a result of the stop.   Upon consideration of all the evidence, the Court **DENIES**

21  Defendant's Motion.

22      The Fourth Amendment right to be secure from unreasonable searches and seizures by the

23  government "applies to all seizures of the person, including seizures that involve only a brief detention

24  short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45

25  L.Ed.2d 607 (1975).  A brief investigatory stop does not violate the Fourth Amendment, however, "if

26  the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be

27  afoot.' "   *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).    In

28  determining whether a stop was justified by a reasonable suspicion, the Court considers whether, in

1   light of the totality of the circumstances, law enforcement had "a particularized and objective basis for

2   suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411,

3   417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).   For purposes of this analysis, the totality of the

4   circumstances includes "objective observations, information from police reports, if such are available,

5   and consideration of the modes or patterns of operation of certain kinds of law-breakers." *Id*. at 418,

6   101 S.Ct. 690.  In the context of border patrol stops, the Supreme Court has set forth a nonexclusive

7   list of factors upon which Border Patrol agents may rely in finding reasonable suspicion: "(1)

8   characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4)

9   previous alien or drug smuggling in the area; (5) behavior of the driver, including 'obvious attempts

10  to evade officers'; (6) appearance or behavior of passengers; (7) model and appearance of the vehicle;

11  and, (8) officer experience." *United States v. Olafson*, 213 F.3d 435, 439 (9th Cir. 2000) (internal

12  citation and quotation omitted).

13       In the present case, there are numerous factors, which indicate that reasonable suspicion existed

14  at the time of Defendant's seizure.  At the evidentiary hearing, United States Customs and Border

15  Patrol (CBP) Assistant Supervisory Special Agent Michael Moylan testified that on July 31, 2007, at

16  approximately 8:25 a.m., he was present inside the State Route 94 checkpoint near Dulzura, California

17  when agents received an anonymous telephone call from a concerned citizen stating that a dark,

18  green-colored van had just been seen picking up some suspected illegal immigrants on Honey Springs

19  Road and was headed southbound toward Highway 94.  "A reasonable suspicion of criminal activity

20  may be sufficiently particularized where officers have narrowed the time and place of expected

21  criminal activity through deduction or through a reliable tip." *United States v. Berber-Tinoco*,

22  ___F.3d.___, 2007 WL 4410259 (9th Cir. 2007) (internal citation omitted).  According to Agent

23  Moylan, this area is a common alien smuggling route which is located approximately six miles north

24  of the International U.S./Mexico border and approximately two miles north of the Highway 94

25  checkpoint.  Agent Moylan, who had been an agent with the border patrol for six years, testified that

26  the anonymous telephone call came in during early morning shift change when it is common for alien

27  smugglers to try to smuggle illegal immigrants into the United States.

28       Agent Moylan testified that upon receiving notification of the citizen call, he and CBP Agent

1  Fallis immediately responded to the area in order to locate the vehicle.  At approximately 8:34 a.m.,

2  the agents saw a dark green Chevy Lumina mini-van, bearing California License plate number

3  3NTC097 at the intersection of Highway 94 and Honey Springs Road.  The mini-van matched the

4  earlier description given by the anonymous caller.  The agents saw the van turn west on Highway 94.

5  The agents began to follow the van.

6       As the agents followed the van, Agent Moylan testified that they called back to sector for a

7  license plate check of the vehicle.  The license plate information indicated that the registered owner

8  of the vehicle had a "San Diego" address and not an "East county" address.  Agent Moylan testified

9  that it was unusual for a non-local resident to be driving on that portion of Highway 94 at that time of

10  the morning.  Agent Moylan further stated that normally there are school buses and neighborhood

11  residents driving to work at that time of the day.

12       Agent Moylan testified that as the agents followed the van, they saw several passengers inside

13  the van looking back at the agents.  Agent Moylan testified that the van was riding lower to the ground

14  than normal and had tinted windows.  Agent Moylan testified that based upon these observations, the

15  agents activated their marked service vehicle's emergency overhead lights and siren in an attempt to

16  stop the vehicle.  The van failed to yield and continued westbound on Highway 94.  Agent Moylan

17  testified that after following the van for less than a minute at a speed of 45 miles per hour, they

18  terminated the pursuit of the van because it appeared that the driver of the van was attempting to pass

19  other cars on the two-lane road in an unsafe manner.

20       At approximately 9:00 a.m., San Diego Sector CBP helicopter pilots Stevenson and Carney

21  relayed over the service radio that they had located the van via helicopter and requested assistance in

22  making a vehicle stop.  The van was now traveling from Jamacha and Highway 94 in Jamul, California

23  heading westbound towards San Diego, California.  The pilots continued relaying the location of the

24  van over the radio.  CBP Agent C. Liedecke, who was assigned to the Smuggling Interdiction Group,

25  was in an unmarked service vehicle on Highway 94 at Euclid Avenue in San Diego, California when

26  the van passed his location.

27       Agent Liedecke saw the van as it traveled westbound on Highway 94 and began to follow it.

28  Agent Liedicke confirmed the license plate and vehicle description of the van. Agent Liedecke

07CR2233L

1   continued following the vehicle as it went northbound on Interstate 805 for about one mile and then

2   exited the freeway at Home Avenue.  The van made a right turn onto Home Avenue and came to a stop

3   at a red traffic light at the intersection of Home Avenue and Fairmount Avenue.  Agent Liedecke

4   pulled his vehicle directly behind the van and saw numerous people inside.  Agent Liedecke got out

5   of his vehicle and casually approached the van to talk with the driver.  As Agent Liedecke approached

6   the van, he placed a controlled tire deflation device in front of the rear driver's tire for personal safety

7   and safety of the public.  Agent Liedecke, who was in plain clothes, held his badge up to the driver's

8   side window displaying it to the driver, later identified as the Defendant.

9         Agent Liedecke saw several individuals lying down in the back of the van as if they were trying

10   to conceal themselves.  Agent Liedecke could clearly see the driver's face and took notice of his

11   clothing.  Upon seeing Agent Liedecke's badge, the Defendant drove the van forward and left the

12   scene.  The controlled tire deflation device successfully penetrated the tire.  Agent Liedecke recovered

13   the controlled tire deflation device, as Agent O. Quintero, who had come to assist Agent Liedecke,

14   pursued the van.

15         The van traveled northbound on Fairmount Avenue.  The CBP helicopter pilot also continued

16   surveillance of the van as it made several turns on side streets.  Agent Quintero, with assistance from

17   the CBP helicopter pilots, followed the van traveling on a flat tire for approximately one mile until it

18   came to a stop in a cul-de-sac.  Agent Quintero and the helicopter pilots saw the Defendant open the

19   driver side door, exit the vehicle, and flee on foot, leaving the van in gear and still rolling.  The van

20   collided with a parked vehicle and the van's other occupants exited and fled.  After considering these

21   facts in their totality, the Court finds that reasonable suspicion clearly existed.

22         The Court notes that Defendant was not "seized" for Fourth Amendment purposes until he was

23   physically apprehended by border patrol agents at the end of his chase.  *See United States v.*

24   *Santamaria-Hernandez*, 968 F.2d 980, 983 (9th Cir. 1992).  The activation of law enforcement sirens

25   and/or lights does not equate to a seizure when the defendant fails to yield to the show of authority;

26   in that event, as is the case here, the seizure occurs only when law enforcement physically subdue the

27   subject.  *Id.*  Furthermore, Defendant's "flight" from law enforcement can be considered as a factor

28   in justifying whether reasonable suspicion existed.  *Id.* (the determination of whether agents had

1  founded suspicion to justify stop can take into account all events that occurred up to time of physical

2  apprehension of defendant.); *see also United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000)

3  (evasive actions of defendant after officer turned on the lights of his patrol car were factored into

4  determination of whether investigatory stop was supported by reasonable suspicion).

5     Therefore, for the reasons set forth above, Defendant's  Motion is **DENIED**;  reasonable

6  suspicion was present at the time of Defendant's seizure.

7

8
 DATED:  January 25, 2008

9

10            M. James Lorenz
          United States District Court Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

         07CR2233L